**BUCK, President of American Society of Composers, Authors and Publishers, et al.**
**v. ROBINSON et al.**

No. 160.

District Court, S. D. West Virginia.

Jan. 9, 1942.

I. T. Cohen, of Atlanta, Ga., and Philip Angel, of Charleston, W. Va., for plaintiffs.

W. K. Cowden, Jr., and J. J. N. Quinlan, both of Huntington, W. Va., for defendants.

HARRY E. WATKINS, District Judge.

Plaintiffs have brought this action to recover damages for the unauthorized performance of three musical compositions entitled "You've Got Me This Way", "My Blue Heaven", and "Sweet Sue, Just You," at defendants' dine and dance establishment, Shady Rest, near Huntington, W. Va., on February 8, 1941. A jury was waived and the case submitted to the court for decision as to all questions of law and fact.

At a pre-trial conference, all issues of fact were eliminated except the following: (1) Were these three musical compositions, or any of them, performed by defendants or at defendants' place of business on February 8, 1941? (2) If so, were any of such compositions performed contrary to instructions given to the orchestra by defendants and without the consent, knowledge and approval of defendants? (3) Were such compositions performed by defendants for profit?

During December, 1940, and January, 1941, plaintiffs made repeated efforts to sell defendants a license to play their tunes (commonly called ASCAP compositions) at a small road house on the outskirts of Huntington, W. Va. Defendants repeatedly declined to apply for or purchase this license, while plaintiffs continued to insist that they sign up.

After failing to sell their license, two ASCAP investigators, James B. Hafley and P. O. Alexander, appeared together at Shady Rest on the night of February 8. They both testified that while they were there they heard the three musical compositions played by the orchestra. The orchestra leader, John Sibley, called by defendants, stated that none of such compositions was played; that he was certain of this because his orchestra did not have this particular tune in its library, and that he personally called all pieces that were played. He testified that he dismantled his musical library and all ASCAP tunes were taken out just prior to January 1, 1941; that he and his orchestra got over 100 BMI selections from Radio Station WCMI, at Huntington, and that all music played after January, 1941, was from these BMI stocks. He testified that on one occasion he had a request to play "You've Got Me This Way", but declined to play it because it was prohibited. The written contract whereby Sibley's orchestra was employed, entered into on January 1, expressly stated that Sibley was to refrain from playing ASCAP music. He admits that prior to January 1, 1941, he had played some ASCAP tunes, but that after the contract was entered into which prohibited the playing of such tunes, no ASCAP tunes were played. Sibley's testimony is corroborated by the evidence of defendants, Irvin Robinson and Cleo Robinson. Irvin Robinson testified that he assisted in dismantling the music library, taking out the ASCAP compositions and changing to BMI stocks. Irvin Robinson testified that he could identify the three tunes and that he did not hear them played on the night in question. Cleo Robinson testified to the same effect. Neither testified that they could state definitely that the tunes were not played because they were occupied with

698

other duties. Both defendants testified that they had no complaints that ASCAP music was ever played after January 1.

After qualifying as an expert musician, Paul Dunn, an orchestra leader and teacher of music, testified that any person who is familiar only in a general way with popular music could easily be mistaken as to the identity of a tune, especially if it was not played exactly as written. He stated that for all music there are only seven tones and that any popular tune played today must in many respects, either in harmony or in melody alone, correspond to a similar pattern of melody written many years ago.

The evidence shows that the memory of plaintiffs' two investigators was not so good as to some matters that occurred there that night. Alexander testified that there was a rail with a little swinging door separating the dining room and the dance hall, but the evidence clearly shows that he was mistaken on this point. Alexander testified that there was no charge at all made of them except for food and drink, while Hafley testified the only admission charge there that night was to patrons who cared to dance. Alexander admitted that neither he nor Hafley could see the orchestra where they sat in the dining room, the building being in the shape of an "L"; that they did not go up to the orchestra and made no effort to see or inspect the sheet music being played. While it is not absolutely necessary that one be a musician to identify popular music, neither of plaintiffs' witnesses were musicians. Witness Hafley was not present at the trial, now being an employe of the Federal Bureau of Investigation, but his deposition was read. The court had an opportunity to see and observe all other witnesses on the questions at issue. After such observations, and after hearing the evidence, and again reading it after it was transcribed, I am of the opinion that the plaintiffs have failed to prove the performance of the composition by a preponderance of the evidence. I was impressed with the evidence of John Sibley and the reasons which he assigns for knowing that the compositions in question were not played.

Having decided the first issue or question of fact in favor of defendants, the other questions become immaterial and it is not necessary to decide either of them. Judgment for the defendants.