**BUCK et al. v. ROMAN.**
**Civ. 463.**

District Court, W. D. New York.
Jan. 21, 1943.

**24**

Hancock, Dorr, Ryan & Shove, of Syracuse, N. Y., for plaintiff.

Sullivan & Sullivan, of Dunkirk, N. Y., for defendant.

KNIGHT, District Judge.

This is an action by Gene Buck, as president of the American Society of Composers, Authors and Publishers, Irving Berlin, Inc., and Shapiro Bernstein & Company, Inc., plaintiffs, against Henry Roman, defendant, in which plaintiffs seek to recover damages for an alleged infringement of certain copyrighted songs by unauthorized performances. Deems Taylor, as successor president to Buck, has been substituted as party plaintiff by stipulation. The case was tried and submitted to the court for decision.

Judgment for the defendant.

Plaintiffs allege that the defendant gave unauthorized performances of three songs of which the copyrights have been assigned to the plaintiff, commonly known as A S C A P, the songs being entitled "Sweet Sue, Just You", "Always" and "Careless", and the alleged performances are claimed to have occurred at defendant's restaurant in Dunkirk, New York, on the night of May 24, 1940, and early morning following.

At a pre-trial conference, it was stipulated that the allegations of the complaint are true, except for certain paragraphs. The defendant admits ownership and control of the restaurant, employment of the three piece orchestra and its performance on the premises on the night in question; service of food and drink for a charge; and that no consent of the plaintiffs had been obtained to performance of the musical compositions. The stipulation and admission leave remaining one question of fact which may be stated as follows: Did the defend-

ant on the 24th and 25th days of May, 1940, give public performances of the songs in question in his restaurant and dance hall?

The plaintiff A S C A P is an association engaged in selling performance-licenses of songs copyrighted by its members. There is testimony to the effect that during May, 1940, a competing organization called B M I permitted free performance-use of its copyrighted songs, and that amusement places, similar to defendant's, refused to purchase a license from plaintiff, A S C A P. The latter, by means of investigators, has apparently attempted to check on music performed at non-licensed premises, and on May 24, 1940, it is claimed that two investigators employed by A S C A P entered the defendant's restaurant and dance hall in Dunkirk, New York. At the trial of this action, they were still in the employ of A S C A P and testified to having been to a nearby place of amusement, before reaching defendant's. Each testified purporting to refresh his memory from notes claimed to have been made at the restaurant on the night in question, and each gave almost identical testimony as to the names of the musical numbers performed and the times of performances. Neither professed to qualify as an expert musician; the witness, Schlums, admitted that he had no musical education, and the witness, Baldwin, testifying to three years study of music in a University and three years study of the banjo but did not claim any knowledge of orchestrations or "swing" music or any professional experience or current study since 1939. Both testified that they had drunk some beer in the previous premises visited the same night and in the defendant's premises. Each stated that he had two bottles of beer at defendant's restaurant but the quantity attributable to Schlums varied from "2" to "3 or 4" to "several."

No testimony indicates that a performance of the words was given and the issues are thus restricted to the music solely.

The witness, Baldwin, who claimed to have some musical education, testified that he was "familiar" with the three songs and "heard them performed" that night but made no other identification and no reference whatsoever to the sheet music of which a copy was attached to the complaint. He "relied solely on his own judgment about this music."

The witness, Schlums, testified that he was "familiar" with "Always" but did not

directly testify to any familiarity with the other two songs. He also admitted that he could not read music and that his "familiarity with music" was gained by listening to "Victrola" records and the radio. Needless to say he made no reference to the sheet music.

These investigators, although testifying identically with reference to the titles and times of performances of the three songs, were confused and unreliable as to accompanying facts. Schlums, who claimed to have ordered, could not identify the bartender as a man or a woman nor positively state whether or not the orchestra in the dance hall was visible from where he claimed to be sitting in the bar-room. His testimony varied as to the number of bottles of beer he consumed, and he could not recognize a member of the orchestra in the courtroom and could not testify whether the orchestra played by ear or sheet music. Baldwin testified he was served food and observed others being served but could not recall the location of the kitchen; he was further vague as to the existence and location of a sign "Roman's Restaurant" and did not know the price of the food or beer consumed. Although professing some knowledge of music, Baldwin did not know who the leader of the orchestra was.

The defendant, Roman, both in interrogatories and the testimony stated that the songs were not played. He further testified that he had never seen the two investigators before, and that the orchestra was instructed to not play certain pieces and that the orchestra would refuse requests for them but that the customers might play them on the nickel machine.

The defendant called, as a witness, Louis A. Green, the leader of the orchestra, who impressed the court by his straight forward testimony. He testified that he had begun to play the piano 31 years ago and that he had played in orchestras and road shows and led a 16 piece orchestra as well as having composed numbers.

He further testified that he selected the numbers to be played; that he made investigation first to determine who wrote the music before playing it and that he had a list prepared that the orchestra was allowed to play. He directly testified that the orchestra did not play the numbers in question and assigned the foregoing as his reason for remembering.

With respect to the evidence offered by the plaintiffs he testified, qualifying as an expert, that one or two persons out of a hundred can tell what a band is "swinging" or "jamming" depending on the style, character and tempo in which the rendition occurs and that the chord progression is the same for several numbers.

No attack was made upon this testimony by expert witnesses for the plaintiffs and no rebuttal was offered.

 In view of the inconclusive evidence offered by the plaintiff and the vagueness and discrepancies admitted by his two sole witnesses, and in view of the expert explanation and direct straight forward presentation by defendant's witness, I do not feel that the plaintiff has sustained his burden of proof by a fair preponderance of the evidence. The court is not unmindful of the cases cited in plaintiffs' behalf but nevertheless is convinced that this case is more similar and comparable to Buck v. Robinson, D.C.S.D.W.Va., Jan. 9, 1942, 42 F.Supp. 697, and Buck v. Wood, D.C.S.D.W.Va., Jan. 9, 1942, 42 F. Supp. 698. I direct that judgment be entered accordingly for the defendant.

Findings of fact and conclusions of law herein are herewith filed.